NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2024 IL App (4th) 230807-U

NOS. 4-23-0807, 4-23-0808, 4-23-0809 cons.

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
February 9, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* D.C., Jo. S., and Ja. S., Minors | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | McDonough County |
| Petitioner-Appellee, | ) | Nos. 18JA35 |
| v. | ) | 18JA36 |
| Denise C., | ) | 18JA37 |
| Respondent-Appellant). | ) | |
| | ) | Honorable |
| | ) | Heidi A. Benson, |
| | ) | Judge Presiding. |

JUSTICE LANNERD delivered the judgment of the court.
Justices Cavanagh and Doherty concurred in the judgment.

**ORDER**

¶ 1  *Held*: The appellate court affirmed, holding the trial court's unfitness finding was not against the manifest weight of the evidence.

¶ 2  In December 2022, the State filed petitions to terminate the parental rights of respondent, Denise C., as to her minor children, D.C. (born April 2009), Jo. S. (born September 2016), and Ja. S. (born October 2018). In October 2023, the trial court granted the State's petitions. Respondent appeals, arguing the court's unfitness finding was against the manifest weight of the evidence. We affirm.

¶ 3          I. BACKGROUND

¶ 4  In November 2018, the State filed petitions seeking to adjudicate the minors neglected pursuant to the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/1-1

*et seq.* (West 2018)). The State alleged the minors were neglected due to being in an environment injurious to their welfare (705 ILCS 405/2-3(1)(b) (West 2018)) in that (1) respondent was indicated for inadequate supervision, (2) respondent withdrew from services provided in an intact family case initiated after this indicated finding, (3) respondent was indicated for substantial risk of physical injury and environment injurious to the health and welfare of the minors due to domestic violence inflicted by the father of Jo. S. and Ja. S. against respondent while pregnant, resulting in the initiation of a new intact family case, (4) respondent did not complete any of the services required in that intact family case, and (5) D.C. and one of his siblings (not a part of this appeal) were found alone when an Illinois Department of Children and Family Services (DCFS) caseworker conducted an unannounced visit at respondent's home.

¶ 5        In February 2019, and pursuant to respondent's stipulation to the allegations in the State's neglect petitions, the trial court adjudicated the minors neglected (705 ILCS 405/2-3(1)(b) (West 2018)). In March 2019, in a separate dispositional order, the court found respondent unfit for reasons other than financial circumstances alone to care for the minors, made them wards of the court, and placed custody and guardianship of the minors with DCFS.

¶ 6        In December 2022, the State filed petitions to terminate respondent's parental rights as to all three minors, alleging she was unfit because (1) she failed to make reasonable progress towards the return of the minors to her care during the nine-month period following adjudication spanning August 20, 2021, to May 20, 2022 (750 ILCS 50/1(D)(m)(ii) (West 2022)) and (2) she was unable to discharge parental responsibilities due to a mental impairment, mental illness, or mental retardation and this inability shall extend beyond a reasonable period of time (750 ILCS 50/1(D)(p) (West 2022)).

¶ 7        In August 2023, the trial court conducted a fitness hearing.

¶ 8          Dr. Joel Eckert, a clinical psychologist, conducted a psychological evaluation of respondent in September 2020. Eckert testified respondent's IQ reflected "borderline impaired skill," which was "[j]ust above the mild range of developmental disability." Additionally, Eckert explained, "In general, the results of psychological testing suggested quite a bit of psychopathology. That is personality dysfunction including anxiety, depression, hostility, things like that." Eckert stated that based on the test results, he "would have extreme concern regarding [respondent's] ability to offer at least minimally adequate parenting for her children." On cross-examination, Eckert stated he would "still have significant concerns" with respondent's parenting abilities even if she completed services.

¶ 9          Jonna Tyler, a licensed clinical professional counselor, conducted a parenting capacity assessment for respondent in August 2021. Tyler testified that while respondent "demonstrated adequacy in her ability to connect with her children," she demonstrated weakness "in the categories of structure and challenge." More specifically,

> "in the activities that [respondent] took part in that required her to think in a way that she could direct her children, manage her children or take part in an activity where she was in charge directing it, teaching them something, for example, or directing them to assist in picking up the room, managing difficult behavior or just developmentally appropriate behavior, she was observed as unable to master those tasks."

¶ 10          Jodi Whitmer, a family support specialist, testified regarding observing visits between respondent and Ja. S. and Jo. S. during the nine-month period at issue. Whitmer described her observations of a visit on September 16, 2021, during which Jo. S. "would have outbursts and

- 3 -

become very irritated," and where it was "[v]ery hard [for him] to be redirected." Whitmer had to intervene at one point, explaining:

> "There was *** one point when [Jo. S.] was going down the hallway towards the bedroom and [respondent] had went to follow him and I had stepped in and I explained that, you know, visits are meant to be positive. If this continued, then, you know, the kids are going to have to go back to day care because we don't want something like that occurring during visits."

¶ 11        When asked whether there were any "overarching themes or issues or problems" she noticed during the visits, Whitmer explained, "So, generally, it would be [Jo. S.] with outbursts and screaming and throwing toys, fighting. Those types of things. Redirecting was never an easy task while we were there." These behaviors would reach "the point that a lot of times [respondent] would just kind of give in and/or walk away."

¶ 12        Whitmer testified she did not see much progress at all in respondent's parenting abilities during these visits. At most, Whitmer saw "an improvement in [respondent's] trying, but there was not a lot of improvement with follow through."

¶ 13        Lynzie Kerkhove, a DCFS caseworker, testified respondent was required to complete a parenting course, domestic violence course, mental health assessment, psychological evaluation, and parenting capacity assessment pursuant to her service plan. Respondent completed all of the services except the parenting capacity assessment prior to Kerkhove becoming the caseworker in June 2021. While respondent was taught skills to redirect the minors' behaviors as part of her services, Kerkhove opined respondent was unable to apply those skills during visits. Kerkhove did not believe the visits could become unsupervised. Kerkhove explained, "There would be some very good times during those visitations, but [respondent] needed a lot of help or

intervening during those visits. So, therefore, it was a safety issue." Given her concerns with respondent's abilities in handling children with behavioral challenges, Kerkhove did not feel it would be safe for respondent to have the minors on her own and believed the minors would be in danger if they were returned to her.

¶ 14    The trial court found respondent unfit by clear and convincing evidence. The court stated:

"[Respondent] has tried as hard as she was able to correct the conditions that brought the children into care. But we have a consistent concern throughout all of the people who have testified that [respondent] is unable to manage behavior. She's unable to teach lessons to the children. She's unable to provide a safe environment to the children.

It really is not within her ability to parent in at least the supervisory capacity that we expect parents to provide. The Court would note that there is a lot of evidence that [respondent] loves the children very much, and the Court absolutely is cognizant of that fact. And, also, the fact that [respondent] has tried very hard to do what the social workers want her to do and to make the progress necessary to bring the children home. But here we are."

¶ 15    The written order reflects the trial court found respondent unfit on both grounds alleged in the State's termination petitions.

¶ 16    This timely appeal followed.

¶ 17                                    II. ANALYSIS

¶ 18    Respondent contends the trial court's unfitness finding was against the manifest weight of the evidence.

¶ 19        Under section 2-29(2) of the Juvenile Court Act (705 ILCS 405/2-29(2) (West 2022)), the involuntary termination of parental rights involves a two-step process. Parental rights may not be terminated without the parent's consent unless the trial court first determines, by clear and convincing evidence, the parent is unfit as defined in section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 2022)). *In re Gwynne P.*, 215 Ill. 2d 340, 354, 830 N.E.2d 508, 516 (2005). If a parent is determined to be unfit, the trial court next looks to whether termination of the parent's parental rights is in the best interest of his or her child. *In re D.T.*, 212 Ill. 2d 347, 352, 818 N.E.2d 1214, 1220 (2004). In this case, we note respondent challenges only the fitness finding.

¶ 20        We will not disturb a finding of unfitness unless it is against the manifest weight of the evidence. *In re J.H.*, 2020 IL App (4th) 200150, ¶ 68, 162 N.E.3d 454. "A finding is against the manifest weight of the evidence only if the evidence clearly calls for the opposite finding [citation], such that no reasonable person could arrive at the [trial] court's finding on the basis of the evidence in the record [citation]." (Internal quotation marks omitted.) *J.H.*, 2020 IL App (4th) 200150, ¶ 68. "This court pays great deference to a trial court's fitness finding because of [that court's] superior opportunity to observe the witnesses and evaluate their credibility." (Internal quotation marks omitted.) *In re O.B.*, 2022 IL App (4th) 220419, ¶ 29, 217 N.E.3d 341. "A parent's rights may be terminated if even a single alleged ground for unfitness is supported by clear and convincing evidence." *Gwynne P.*, 215 Ill. 2d at 349.

¶ 21        The trial court found respondent was an unfit parent as defined in section 1(D)(m)(ii) of the Adoption Act (750 ILCS 50/1(D)(m)(ii) (West 2022)). Section 1(D)(m)(ii) provides, in part, a parent will be considered an "unfit person" if he or she fails "to make reasonable progress toward the return of the child to the parent during any [nine]-month period following the adjudication of [neglect]." 750 ILCS 50/1(D)(m)(ii) (West 2022). Reasonable progress exists when

the evidence shows "the progress being made by a parent to comply with directives given for the return of the child is sufficiently demonstrable and of such a quality that the court, in the *near future*, will be able to order the child returned to parental custody." (Emphasis in original.) *In re L.L.S.*, 218 Ill. App. 3d 444, 461, 577 N.E.2d 1375, 1387 (1991).

¶ 22　　　　Respondent argues her "progress in the relevant nine-month period was objectively reasonable because she substantially completed her service plan long before that period." In determining a parent's fitness based on reasonable progress, a court may only consider evidence from the relevant time period. *In re Reiny S.*, 374 Ill. App. 3d 1036, 1046, 871 N.E.2d 835, 844 (2007). While respondent may have completed various services, she did so before the nine-month period at issue. Thus, we may not consider this prior participation in services in determining whether the trial court's finding respondent was unfit due to the lack of reasonable progress during this period was against the manifest weight of the evidence.

¶ 23　　　　A parent does not demonstrate reasonable progress towards the goal of reunification with her children if she does not implement the skills taught to her through her services. See *In re R.L.*, 352 Ill. App. 3d 985, 999, 817 N.E.2d 954, 966 (2004). As this court has observed, "there [is] a significant difference between going through the motions, checking off the boxes, and mechanically doing what is asked of the parent and actually changing the circumstances that brought the children into care." *In re Ta. T.*, 2021 IL App (4th) 200658, ¶ 56, 187 N.E.3d 763. "The point of requiring parents to attend classes and engage in services *** is so parents *apply* what they learn *** such that the court can be confident that the children will be safe in their care." (Emphasis in original.) *Ta. T.*, 2021 IL App (4th) 200658, ¶ 56.

¶ 24　　　　Here, the evidence established, despite prior completion of services, respondent was unable to implement the skills she learned to safely and appropriately parent the minors.

Although observed to be "kind, warm, and patient" with the minors, respondent exhibited significant difficulties, even after completing services, with directing and teaching the minors. Additionally, she was observed having difficulties redirecting and managing the children's difficult behaviors. While respondent increased her efforts, there was not much in the way of improvement in her abilities. Further, while there would be "some very good times" during visits, the degree to which respondent still required help during those times was such that it was deemed a "safety issue" to progress to unsupervised visits. Indeed, the evidence demonstrated the minors would be in danger if they were returned to respondent's care. Based on the evidence presented, the trial court's finding respondent was unfit for failing to make reasonable progress toward the return of the minors during the relevant nine-month period was not against the manifest weight of the evidence.

¶ 25　　　　Having concluded the trial court's finding respondent was unfit for her failure to make reasonable progress was not against the manifest weight of the evidence, we need not address the additional basis of unfitness. See *In re M.J.*, 314 Ill. App. 3d 649, 655, 732 N.E.2d 790, 795 (2000).

¶ 26　　　　　　　　　　　　　III. CONCLUSION

¶ 27　　　　For the reasons stated, we affirm the trial court's judgment.

¶ 28　　　　Affirmed.